IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 07-0783
════════════
 
 
Irving W. Marks, 
Petitioner,
 
v.
 
St. Luke’s Episcopal Hospital, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the First 
District of Texas
════════════════════════════════════════════════════
 
 
Argued September 11, 2008
 
 
 
            
Justice 
Hecht, dissenting.
 
 
            
I join Justice Johnson’s 
dissent with this bit of explanation.
            
Marks has never had but one complaint: that he 
fell in his hospital room. The “Facts” section of his original petition and four 
amended petitions never changed substantively.1 All his alleged damages occurred in that 
one event. But he contends that he has two claims against the Hospital: one for 
breaching the standard of professional care in treating him, a health care 
liability claim, and another for breaching the standard of ordinary care in 
attaching the footboard to his hospital bed, an ordinary negligence claim. He 
argues that his original petition pleaded only a claim of ordinary 
negligence,2 as made clear in his first amended 
petition,3 but that his second, third, and fourth 
amended petitions asserted both a health care liability claim and an ordinary 
negligence claim.4 Marks filed expert reports that were 
timely in relation to the second amended petition but late with respect to the 
original petition. The Court concludes that he asserted both claims from the 
beginning, that his health care liability claim was properly dismissed for 
failure to timely file an expert report, and that only his ordinary negligence 
claim remains.
            
I agree with Justice 
Johnson, for the reasons he thoroughly explains, that Marks had but one 
claim from the beginning, a health care liability claim. The Court speculated in 
Diversicare General Partner, Inc. v. 
Rubio that “[t]here may be circumstances that give rise to premises 
liability claims in a healthcare setting that may not be properly classified as 
health care liability claims,”5 but we certainly did not suggest that the 
same circumstances could give rise to both a health care liability claim 
and an ordinary negligence claim. Justice Johnson warns of problems 
attendant to that approach. In terms of concrete examples, a plaintiff may 
intend to assert only an ordinary negligence claim, as Marks says he did, only 
to be told after the deadline for an expert report that he also asserted a 
health care liability claim that must be dismissed. Artful pleading is risky 
because, as we said in Diversicare, it is the 
“gravamen of [the] complaint”, not the label, that is 
determinative.6 On the other hand, a plaintiff may 
attempt to plead only an ordinary negligence claim at first and defer pleading a 
health care liability claim in order to allow more time for filing an expert 
report and to conduct full discovery immediately.7 This subterfuge should not succeed. And 
if two separate claims are tried to verdict and judgment, a jury will be asked 
to apply two different standards of care to the same conduct and determine 
damages for each breach separately, and the trial court 
will be required to apply different limitations to the same findings of 
damages.8
            
In the abstract, health care may not seem to involve bed assembly. In a 
hospital room, in the circumstances presented, I agree with Justice Johnson that it 
must.
 
            
            
            
            
            
            

            
            
            
Nathan L. Hecht
            
            
            
Justice
Opinion delivered: August 28, 
2009






[1] The 
“Facts” section of Marks’s original petition stated:
 
                
“5.           
On or about March 24, 2000, Irving Marks, a 66-year-old man, suffered 
severe injuries after a fall from his hospital bed at St. Luke’s.
 
                
“6.           
Mr. Marks was admitted to St. Luke’s on March 17, 2000, to undergo 
treatment for chronic intractable failed back symptomatology and intractable radiculopathy after five lumbar operations failed to cure 
Mr. Marks’ severe back problems.
 
                
“7.           
On March 17, 2000, Mr. Marks underwent surgery to implant an intrathecal morphine pump catheter. Immediately following 
his surgery, Mr. Marks began his morphine treatment with an initial dose of .25 
milligrams, and Mr. Marks’ morphine doses were raised incrementally up to four 
milligrams on the ninth day.
 
                
“8.           
After his surgery and his morphine treatment, Mr. Marks’ condition 
improved drastically until Mr. Marks fell the night of March 24, 2000.
 
                
“9.           
At the time of his fall, Mr. Marks was getting up from his hospital bed 
in the middle of the night, and Mr. Marks was in an upright position sitting at 
or near the foot of his hospital bed. Mr. Marks placed his hand on the hospital 
bed's footboard to push himself up to a standing position. As he was pushing 
himself up, the hospital bed's footboard fell off causing Mr. Marks to fall to 
the floor.
 
                
“10.         
Mr. Marks suffered severe personal injuries as a result of the fall.”
 
                
Marks’s first amended petition renumbered the paragraphs because of 
insertions earlier in the pleading, changed “drastically” to “markedly” in 
original paragraph 8, and omitted original paragraph 10. Original paragraph 9 
was edited to read: “At the time of his fall, Mr. Marks was getting up from his 
hospital bed. Mr. Marks was in an upright position sitting at or near the foot 
of his hospital bed. As Mr. Marks placed his hand on the hospital bed's 
footboard to push himself up to a standing position, the hospital bed's 
footboard broke free from the bed causing Mr. Marks to tumble to the floor.” Two 
new paragraphs, 12 and 13, were added, the first alleging that “[i]n addition to a shoulder dislocation, Plaintiff suffered 
severe injuries to his, knee, neck, and head”, and the second that “[a]s a 
result of his injuries, Mr. Marks had to seek further treatment at Methodist 
Hospital and the Texas Institute for Rehabilitation and Research.”
 
                
Marks’s second and third amended petitions made no changes in the 
section. His next amended petition changed “Irving Marks”, “Mr. Marks”, and 
“Plaintiff” to “Irving W. Marks” throughout, changed “tumble” to “fall” in the 
revision of original paragraph 9, changed “dislocation” to “injury” in paragraph 
12, and shortened original paragraph 6 to read: “Irving W. Marks was admitted to 
St. Luke’s on March 17, 2000, to undergo treatment for back pain.”

[2] Marks’s 
original petition asserted that the Hospital “breached the duty of ordinary 
care” in four “particulars”:
 
                
“a.           
By failing to properly train and supervise any and all agents, employees, 
servants, and nursing staff when caring for Mr. Marks to prevent and protect him 
from falls and injuries;
 
                
“b.           
By failing to provide Mr. Marks with the assistance he required for daily 
living activities;
 
                
“c.           
By failing to provide Mr. Marks with a safe environment in which to 
receive treatment and recover; and
 
                
“d.           
By providing Mr. Marks with a hospital bed that had been negligently 
attached and assembled by the Defendant’s employees, agents, servants or nursing 
staff.”
 

[3] In 
response to the Hospital’s request that Marks clarify whether he was asserting a 
health care liability claim, he filed his first amended petition, asserting that 
the Hospital had “breached the duty of ordinary care” in only these two 
“particulars”:
 
                
“a.           
Failing to install and/or maintain bed rails on the bed occupied by Mr. 
Marks, and
 
                
“b.           
Failing to repair and/or maintain the footboard to Mr. Marks’ bed.”
 
The first 
amended petition also contained a new section labeled “Premises Liability”, 
asserting that Marks’s hospital bed was in a “dangerous condition . . . attributed to its unstable, broken 
and/or defective footboard and the improper use or absence of its bedrails. This 
condition posed an unreasonable risk of harm.”

[4] In his 
second amended petition, repeated in his third and fourth amended petitions, 
Marks asserted that the Hospital had “breached the duty of ordinary care” in 
these “particulars”:
 
                
“a.           
Failing to install and/or maintain bed rails on the bed occupied by Mr. 
Marks;
 
                
“b.           
Failing to properly assemble and/or maintain Mr. Marks’ bed;
 
                
“c.           
Failing to repair and/or maintain the footboard to Mr. Marks’ bed;
 
                
“d.           
Failing to properly monitor Mr. Marks;
 
                
“e.           
Failing to inspect Mr. Marks’ bed;
 
                
“f.            
Failing to implement adequate policies and procedures to inspect its 
hospital beds;
 
                
“g.           
Failing to take precautions to prevent Mr. Marks’ fall;
 
                
“h.           
Failing to ensure that adequate policies and procedures were in place for 
the hiring, training and supervision of the nursing staff at the hospital; 
and
 
                
“i.            
Failing to ensure that the person(s) hired to work at the hospital had a 
sufficient understanding of safety concerns for the patients and was competent 
to formulate policies and procedures for patient safety and quality 
assurance.”
 
                
The second, third, and fourth amended petitions retained the “Premises 
Liability” section essentially unchanged, but in their “Negligence” sections 
added the allegation that the Hospital was negligent in its “nursing monitoring, 
nursing care and/or treatment” of Marks.

[5] 185 S.W.3d 842, 854 (Tex. 
2005).

[6] Id.

[7] 
See Tex. Civ. Prac. & 
Rem. Code § 74.351(s) (“Until a claimant has served the expert 
report and curriculum vitae as required by Subsection (a), all discovery in a 
health care liability claim is stayed except for the acquisition by the claimant 
of information, including medical or hospital records or other documents or 
tangible things, related to the patient’s health care through: (1) written 
discovery as defined in Rule 192.7, Texas Rules of Civil Procedure; (2) 
depositions on written questions under Rule 200, Texas Rules of Civil Procedure; 
and (3) discovery from nonparties under Rule 205, Texas Rules of Civil 
Procedure.”).

[8] Id. 
§§ 74.301-.303.